Good morning, Your Honors. Kelly Quinn on behalf of Appellant Jose Segundo. We've raised several issues in our brief. If the Court has a preference, I can start where the Court has questions. If not, I'll begin with the arguments concerning the expert opinions. The facts of the instant case are relatively simple. Mr. Segundo and co-defendant Gutierrez-Garcia were stopped at a Border Patrol checkpoint in Arizona. A subsequent search of the vehicle found cocaine well hidden in secret compartments in the back of the truck. Mr. Segundo maintains he didn't know the drugs were in the vehicle. In an attempt to show that Mr. Segundo knew about the drugs, the government called five witnesses and asked each to some extent to render expert opinions. The most troubling were the testimony of Agents Boyne and Gorg. Starting with Boyne, at the time of the stop, he had worked as a DEA agent for approximately three months. At the time of trial, he had been a part of eight cases and had assisted in 20 or 30. No specifics about those prior cases were provided, yet Boyne went on to give a host of expert opinions. On the issue of drugs, he testified, among other things, that a drug trafficking organization would not use a blind mule, that a passenger would not bring an unknowing witness to a drug transaction, and that the company who owned the truck Mr. Segundo was driving was just a shell company to transport drugs. Sotomayor, help me out. What objection was made to that and what was the court's ruling? The defense counsel objected, saying he wasn't qualified. And what the lower court did was said, well, it's up to the jury. The jury can decide the weight of the expert's opinion. It should come in. But, of course, the trial court is meant to be an ever-vigilant gatekeeper in expert opinion. You can't – the trial court cannot delegate that duty to the jury. And that's exactly what the trial court did as it related to Boyne. Said the testimony come in, the jury can decide the weight of it. But this was raised initially in the motion in Lemony where the judge said the person could – these people could testify reserving the weight issue to the jury, which would be the proper apportionment of duties, wouldn't it? No, the motion in Lemony was concerning whether or not blind mule testimony applied to this case. There was no disclosure of the fact that Boyne would be the one providing that blind mule testimony, nor was there disclosure about the fact of what the blind mule testimony was actually going to be. Of course, a DEA agent does not automatically become an expert in all aspects. So was – I'm sorry, I haven't read the entire transcript. Was he – was he was proffered as an expert and his expert qualifications were? No, absolutely not. He was never – he was listed in the initial disclosure. The government's disclosure says we have agents and they may testify to drug matters. And then in the amended disclosure, the government said the agents will testify consistent with their police reports. Well, Boyne's report is just a fact report. It lists the facts of him coming to the scene, the facts of the seizure. It says absolutely nothing about any expert opinion. So that was all that was proffered before the trial began. In fact, by pointing to that report, the government affirmatively asserted that Boyne would only be a fact witness and would not be an expert witness. And then it gets to trial and the government starts asking – immediately starts asking him his opinions based on his training and experience as a DEA agent. And of course, a DEA agent does not automatically become an expert as soon as he graduates from the academy. In order to be an expert based on practical experience, the witness must explain how and why his prior experience leads to his conclusions. Boyne's testimony here failed on two levels. He didn't show he had the requisite number of prior experiences. And just as important, he did nothing to show that any experience he did have was sufficient – sufficiently similar in nature to the instant case so as to support his opinions. There is no magic number of cases it takes to be an expert. In the AOB, we cited a case where there was a well-qualified officer who had less than 12 prior firearm cases, and he was deemed not to be an expert. Other cases which showed that 100 prior similar cases or 11 years prior experience would be sufficient. But here, you know, he was an agent for three months at the time of the stop. And he had been a part of eight cases and assisted in 20 or 30. He gave no explanation as to what a part of or assisted in meant. But more importantly, he gave – But he could have been – you could have cross-examined him about that, right? Well, the defense objected to him being an expert at all. He did – they did cross-examine him. He did say he had been a Title – he had been an affiant in a Title III warrant. But he didn't state – and of course, it's the government's burden. They're proffering the witness. They're the ones who have the burden to lay the foundation for his testimony. They're the ones that have the burden to say here's his prior experience and here's how it informs the opinion he's given in this case. But they did nothing to show what in these prior eight cases led him to conclude who a drug trafficking organization would trust. They didn't do anything to show what about his prior eight cases led him to conclude that the trucking company was just a shell company. And of course, you know, his testimony went beyond just drugs. The government asked him to opine based on his training and experience, also about the suspiciousness of the route Mr. Segundo took. The government provided no foundation saying that there was anything in his prior eight cases which led to the conclusion that the route Mr. Segundo took was suspicious. How much experience do you have to have to know that to go from Yuma to Phoenix that you ought to be taking the interstate instead of the back roads? Well, it's not a back road. I mean, you know, the government didn't present – I'm not from Phoenix. I'm from Los Angeles. The government didn't present any evidence it was a back road. It's a road two ways to get to the same point, and it's a road big enough to have a Border Patrol checkpoint. You know, Gord testified that he talks to several truckers a day at the 95 checkpoint. Then he testified it's suspicious for a trucker to take the 95 checkpoints. That's sort of an inconsistent argument. It's obviously not that suspicious. It may depend on where you're going on the 95. If you're going to Phoenix, this may not be the place where you're – this may not be the place where the truckers are going. Sure. There are two ways to get there. He went one way. The other way would be, according to trial, I-8. But keep in mind, Mr. Segundo, like myself, is not from Arizona. He works in the Port of Los Angeles, and he was making this run in Arizona. So, I mean, there's nothing – So it's pretty hard to get lost down there. Well, I'm not sure he was lost. But, I mean, he wasn't going on a – you know, one of the – you know, I don't want to get too much into the Border Patrol checkpoints, but one of the requirements is that they're on roads that are large enough to intersect other roads. That's what you need in order to have a legitimate Border Patrol checkpoint. This was a road big enough to have a legitimate Border Patrol checkpoint. Similar problems occurred with the expert testimony of Border Patrol agent Gorg. The government failed to elicit his training and only minimal information about his experience. He did testify that he'd been a Border Patrol agent for six years and was, at the time of the stop, working as a canine handler. Gorg and Siddons had both testified that the role of a Border Patrol agent is to intercept illegal aliens. It's certainly not an agency tasked with regulating truckers. Yet Gorg was asked to give numerous expert opinions concerning trucking. He was asked, as a Border Patrol agent with your training and experience, where would you expect someone to drive from Gadsden to Phoenix if they were taking a load? He was also asked to opine to use his experience to determine whether a trucker would have  And keeping in mind, Gorg testified that he had worked as a Border Patrol agent on the Arizona-Mexico border, checking people who were coming across the border. He then testified that he had worked as an air observer getting people who are gotaways, and now he works as a canine handler at the Border Patrol checkpoint in the heart of Arizona. Kagan. I'm sorry. I don't mean to be difficult here, but just where did the district court go wrong in admitting this testimony? At what juncture? Well, as to Boyd, they went wrong by saying it's up to the jury to decide. As to Gorg, the lower court went wrong because he said, well, he's talked to truckers as part of his job, so he can opine as to basically anything about trucking. The real key here is the government didn't show what those conversations were about. We know from case law that a Border Patrol agent is tasked with intercepting illegal aliens. So what about discussions with truckers in Arizona would lead to Gorg's opinion that if you're driving from Los Angeles to Gadsden, you wouldn't have a co-driver? There has to be, in order to qualify as an expert, you have to have facts of what the prior experience is, and the government must show that those prior experiences are sufficient to inform the opinion. Here, as to Gorg, they didn't do that. They just said that the lower court, when the defense objected to him being able to testify on matters of trucking, the lower court said, well, he's talked to truckers as part of his job. So he didn't say anything about what those conversations were or anything about how they led to the conclusion as to what route's a proper, what's the best route, what route is more suspicious. By failing to performance duty, which would be to be a gatekeeper, by failing to make the decisions himself, he should have made the decision himself as Du Bois, and he shouldn't have said, yeah, it's a little bit of experience, but we'll let the jury decide. As to Gorg, the lower court said, well, he's talked to truckers, so he must be an expert in all areas of truckers. By doing those two things to these two witnesses, the lower court utterly failed to performance duty. This is not a case where one wayward witness got away from the government and started expressing answers as expert opinions. Here, it was the government's decision to ask a significant number of its questions this way. Even when asking Gorg about the price of gas, the government phrased the question as, in your training and experience as a border patrol agent, are you familiar with the price of diesel? This was the government's error because it chose to present its case this way, asking what should have been fact witnesses' expert questions, turning them into authority figures, opining as to the suspiciousness of Mr. Segundo's actions. These so-called experts about drug trafficking organization and trucking standards went to the heart of Mr. Segundo's defense that he didn't know the drugs were in the truck. Thus, the government could not show their admission was harmless. I would like to briefly discuss the jury instruction issue. Mr. Segundo also asserts that the lower court improperly gave the deliberate ignorance or jewel instruction. This is a unique jury instruction that essentially treats deliberate ignorance and actual knowledge and intent as the same thing. Because this instruction has the practical effect of lowering the government's burden of proof, it should not be given in every case where a defendant claims lack of knowledge. It's only appropriate where the government presents specific evidence that the defendant, one, was aware of the high probability that drugs were in the vehicle, and, two, deliberately avoided taking steps to confirm or deny those suspicions. Even if the circumstances are highly suspicious, this instruction is improper unless the defendant acts deliberately to avoid learning the truth. Now, the instant case is a far cry from the facts in the jewel case. There, the defendant claimed a stranger approached him in Tijuana and offered to sell him marijuana. The defendant declined. The stranger then offered him $100 to drive a car across the Mexican border. Once inside the car, the defendant noticed there was a hidden compartment, but did nothing to investigate it. Our en banc decision in Heredia is a little bit harder for you, isn't it? Well, in Heredia, that's in her – I'm sorry, Heredia? Heredia. Yes. Well, in that case, she says, by her own admission, she starts to think when she's driving that there are drugs in the car, and she does not pull over and stop to check the car. Now, she had some – she said it wasn't safe to pull over. And, you know, this Court may or may not have believed that. But the key element there is she admitted she started to believe that there were drugs in the vehicle. There's no similar evidence that Mr. Segundo had any awareness that there were drugs in the vehicle. But he did testify, or it was conceded at trial, that the circumstances surrounding the load seemed odd to him. He didn't have a bill of lading, which would be not usual. He took an unusual route from Gadsden to Phoenix. He lied about the company he worked for and how long he'd worked there. He got the deer in the headlights look when asked to untie the load. What else do you need to have some evidence to support a deliberate – He testified that the circumstances seemed, quote, a little unusual. We do dispute the fact that he lied about where – the deer in the headlights look. You've got all these officers there who are speaking to him in English, which is not his first language, which he barely speaks. They say, you know, untie the straps. He doesn't move. And then Lopez asks him in Spanish, and he says, si oficial, and he goes and he unties the straps. I'm not sure the fact that he does not react to the command in English is indicative of the fact that he knew drugs were in the vehicle. But if you take them all in concert, not picking and choosing between them, it's a pretty good picture for a dual instruction. Or asked another way, what else would you want to know before you go to the dual instruction? Well, if they had any evidence that he saw the secret compartment like they did in Juul, in Juul, the defendant sees there's a hidden compartment and does nothing to investigate it. In Heredia, she testifies that she knows that she thinks that drugs are in the vehicle and she does nothing. None of the facts – In Heredia, she just dawns on her while she's driving because of the strange conversation of the mother and her aunt that something might be wrong. Exactly. That something might be wrong, but not just that something might be wrong, but that it might be drugs because, you know, the aunt's boyfriend had been a drug dealer and they had an awful lot of money on them. She doesn't just think, hey, something might be a little bit unusual because I'm taking a two-lane route. She thinks, hey, I think there might be drugs in the vehicle. I'd like to reserve any remaining time I have for rebuttal. You have about three seconds, but I'm going to give you a minute. May it please the Court, my name is Karla Hodes-DeLure, representing the United States in this matter. With this case, it's really important to not lose sight of the force through the trees. Here, there was overwhelming evidence of the defendant's guilt that the government presented that would sustain the jury's verdict.   No one disputed Agent Leon's training, qualifications, or the testimony he presented. Agent Leon testified about how drugs are disguised in legitimate truckloads, about how drug trafficking organizations use blind mule testimony, the unusual route the defendant took in this case, and things that would make a truck driver suspicious in this case, including the size of the load, the cost efficiency of such a small load, the availability of lumber and Gatson, the bills of lading and the lack of one in this case, and the use of log books. What defendant is now challenging is additional evidence presented by Agents Gorg and Boyne by arguing that they weren't qualified to give this testimony. But Agents Boyne and Gorg were properly qualified to give this testimony, whether it came in as under Rule 701 or 702, they were properly qualified based on their training and experience to give this testimony, and it was all cumulative to the unobjected-to expert testimony that Agent Leon gave on all of these subject matters. In addition, the court ---- Roberts, before you go on, I mean, do you concede that the district judge essentially delegated the duty of under evidence of Rule 104 and the gatekeeper function, as the defense suggests? No, not at all. The ---- what happened is the defense filed a motion to preclude the testimony based on the government's disclosure. The government ---- they had a hearing about it. The government or the government responded saying, we've provided the expert's witnesses and test ---- we've provided the expert's opinion, they've attached the reports of investigation, they attached Gorg's. What happened then is that trial, when there were objections on foundations or lack of training, the prosecutor asked to elicit the testimony from the agents regarding their background and experience. And based on those ---- in fact, one of them, there was a second objection saying he hasn't shown how this relates to his personal experience, and Agent Boyne went on and discussed that. And so the court at that point allowed the testimony to proceed because they had met the ---- that gatekeeping role. If the court felt that it was inadequate, it would have sustained the objection and not allowed them to testify further as to it. So the court did not delegate its role at all. And then the court and any ---- any ---- there was ---- the government contends that Agent Boyne and Gorg's testimony properly came in, and if this court were to make a potential error in allowing it to come in, it was cured by the limiting instruction the court gave in this matter. The government nor the court referred to Agents Boyne and Gorg as experts. And in fact, in the limiting instruction, the court also did not use the phrase experts. It said you have heard testimony from persons who because of education or experience were permitted to state opinions and the reasons for their opinion. The instruction then went on to say, such opinion testimony should be judged like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves considering the witness's education and experience, the reasons given for the opinion and all the other evidence in the case. So the evidence properly came in under either 701 or 702, and then the jury could decide how much weight to give it based on the training and experience that both Agents Boyne and Gorg testified to and as defense counsel thoroughly cross-examined them on their limited experience and the lack of experience. So that instruction. I'm sorry? Who asked for that instruction? The government asked for that instruction. And it came in. But the important thing, too, is even if you were even apart from Agent Boyne and Gorg's testimony, the evidence in this case was overwhelming. You have Agent Leon's testimony. You had the fact that the defendant was with his co-defendant who pled guilty in the case. The defendant admitted that the circumstances of the trip were unusual. And this goes to the deliberate ignorance instruction. There was more than enough evidence to support the giving of a deliberate ignorance instruction. The defendant admitted that he took a suspicious route or that the circumstances were unusual. He had no bill of lading. He testified, and I noticed in reviewing for this, I didn't put this in the excerpt of record, but he did testify that the he had stayed in the truck while the load was being while the lumber was being loaded, and he never stopped to check on the load afterwards. And according to Agent Leon, that was truckers would normally stop to check their load if they didn't watch it being loaded. So the – I lost my train of thought. Excuse me. The fact that the other things to support the deliberate ignorance instruction was the fact that he was taking this unusual route to get to Phoenix. He had no bill of lading, small amount of load or lumber in there, and then the fact that there was a sticky note. He didn't have his exact directions of where to go into Phoenix. He just had a green sticky note with a phone number to call as when he got closer to Phoenix. All of this clearly can support a fact that he deliberately chose not to know what he was hauling in the truck. If the Court has no further questions, I'd be happy to answer any further questions. Otherwise, we would ask that you affirm. Roberts. Thank you very much. Ms. Quinn, I'll give you a minute. As a first point, the defense did object to the testimony of Leon, not as being unqualified, but as being cumulative. When he began to testify, the defense said, you've already had all these other witnesses on trucking. This testimony is cumulative, and the Court said, and the government argued no, and the Court found no. So to say it wasn't cumulative for trial, but now it is cumulative on appeal is disingenuous. Briefly as to the issue about calling him experts, the advisory committee in New York notes to the Rule 2000 Amendment of 702 says the use of the term expert in this rule does not, however, mean that the jury should actually be informed that a witness is testifying as an expert. There's absolutely no requirement that the government refer to the witness as an expert. The hallmark of an expert witness is asking your witness in your practice. The problem is whether or not they could give opinions, isn't it? Right. And every time you ask the witness, based on your training and experience as a DEA agent, how would you expect someone to drive, it seems disingenuous to argue now that they were not seeking an expert opinion because they never called him an expert. The Court's erroneous inclusion of the unsubstantiated testimony, the violation of Rule 16, and the Juul instruction are separate but very interrelated arguments. The government's failure to abide by Rule 16 was a catalyst for the admission of the unsubstantiated expert testimony. That improper testimony, opining that the trip was unusual, was the heart of the government's case. This evidence was made even more damaging by the lesser burden of proof set out in the Juul instruction. Counsel, you're over your time. You may want to wrap up there. Thus, Mr. Segundo contends that the culmination of these errors taken together warrants reversal. Okay. Thank you very much. We thank both counsel for the argument.
judges: Battaglia, Schroeder, Bybee